<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| W.F.,<br><br> *Plaintiff*,<br><br>v.<br><br>ROMAN CATHOLIC DIOCESE OF PATERSON, et al.,<br><br> *Defendants*. | Civil Action No. 20-7020<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court by Defendant Salesians of Don Bosco's ("Defendant" or "Salesians") Motion to Dismiss the Complaint or, in the Alternative, to Strike, ECF No. 7. Plaintiff W.F. ("Plaintiff") opposes the Motion. ECF No. 17. For the reasons explained below, Defendant's Motion is **DENIED**.

**I. BACKGROUND**[1]

This matter arises from Plaintiff's allegations of sexual abuse by Brother Alan Scheneman ("Br. Scheneman"), a brother of the Salesians of Don Bosco. See generally, Compl.

In around 1981-1983, Plaintiff was a teenager and attended the Don Bosco College summer camp in Newton, New Jersey. Id. ¶¶ 28-29. Defendant owned, operated, and maintained Don Bosco College and operated the summer camp on that campus. Id. ¶ 4. Br. Scheneman was Defendant's employee and served as a camp counselor. Specifically, Br. Scheneman ran a photography program at the summer camp and taught Plaintiff and other campers how to take and develop photographs. Id. ¶ 30. Under the guise of teaching Plaintiff photography, Br. Scheneman

---

[1] These facts are drawn from the Complaint, ECF No. 1.1 ("Compl.").

allegedly made nightly visits to Plaintiff in his cabin "to say goodnight" and began sexually assaulting and abusing Plaintiff. Id. ¶¶ 31-33. Additionally, the Complaint alleges that Br. Scheneman also sexually assaulted Plaintiff on a separate camping trip in Goshen, New York sponsored by Defendant. Id. ¶ 34.

Defendant allegedly knew that clergy of the Catholic Church and those within its order of priests were "grooming and sexually molesting children with whom clergy would have contact in their ministry and pastoral functions." Id. ¶ 43. The Complaint points to a conspiracy of concealment that was effected in accordance with a policy set down by the Holy See. Generally, "the Holy See released a confidential document to its Bishops and other officials of Catholic organizations regarding the handling of cases of solicitation of sex in the confession. This document mandated a specific procedure for Holy See's agents, including Defendants, to use when a cleric abused children." Id. ¶ 45. In addition to detailing this conspiracy, the Complaint also points to specific facts suggesting Defendant was aware of Br. Scheneman's abuse. Specifically, Plaintiff alleges Br. Scheneman engaged in sexual abuse of another child at the "Salesian minor seminary in Goshen, New York" and that Defendant had settled several claims relating to Br. Scheneman's sexual abuse of other children. Id. ¶¶ 37-38. Additionally, Defendant allegedly transferred and reassigned Br. Scheneman pursuant to this policy and practice of concealing sexual abuse within the clergy. Id. ¶ 54.

On May 21, 2020, Plaintiff initiated this action in the Superior Court of New Jersey, Law Division, Morris County. See Notice of Removal, ECF No. 1.[2] Plaintiff brings this revival action pursuant to the Child Victim's Act, N.J.S.A. § 2A:14-2b, alleging negligence against Defendant and the Roman Catholic Diocese of Paterson ("the Diocese"). Compl. ¶ 1. Defendant removed

---

[2] This is a diversity action. Plaintiff is a citizen of Florida. Notice of Removal ¶ 5. Defendant is a citizen of New York. Id. ¶ 6.

the action to this Court on June 9, 2020.  See Notice of Removal.  The count against the Diocese was dismissed pursuant to stipulation.  ECF No. 4.  On October 29, 2020, Defendant brought the instant Motion to Dismiss.

## II. LEGAL STANDARD

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted).  To survive a motion to dismiss, the claims must be facially plausible, meaning that the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## III. ANALYSIS

Defendant moves to dismiss the Complaint on the separate theories that (1) the Child Victim's Act violates the due process clause of the New Jersey Constitution, and (2) Plaintiff fails to allege facts sufficient to support his claim for negligence.  Additionally, Defendant seeks to strike allegedly immaterial and scandalous information from the Complaint.  The Court addresses each argument in turn.

### A. Constitutionality of the Child Victim's Act

Defendant argues that the Child Victim's Act violates the due process clause of the New Jersey Constitution because it interferes with vested interests in the expiration of a statute of limitations for tort claims. The Court disagrees.

Plaintiff brought this action pursuant to the Child Victim's Act. Compl. ¶ 1. The Child Victim's Act extended the statute of limitations for child sexual assault claims and additionally revived expired civil claims for victims of childhood sexual abuse in New Jersey for a two-year period. N.J.S.A. § 2A:14-2b. The Child Victim's Act, in relevant part, provides:

> an action at law for an injury resulting from the commission of sexual assault, any other crime of a sexual nature, a prohibited sexual act . . . or sexual abuse . . . that occurred prior to the effective date of P.L.2019, c. 120 (C.2A:14-2a et al.), and which action would otherwise be barred through application of the statute of limitations, may be commenced within two years immediately following the effective date.

Id. In reviewing a challenge to the retroactivity of a statute, courts first consider the legislature's intent. Generally, New Jersey courts give effect to retroactive statutes when the legislature evinces a clear intent that the statute should be so applied. See Twiss v. State Dep't of Treasury, 124 N.J. 461, 467 (1991). Here, the plain language of the Child Victim's Act evidences the legislature's clear intent for it to apply retroactively because it opens a 2-year revival window for victims of any age for claims relating to childhood sexual abuse that previously expired. See N.J. Stat. Ann. § 2A:14-2b (. . . "would otherwise be barred through application of the statute of limitations, may be commenced within two years immediately following the effective date"). This express

language is substantial evidence of the legislature's intent.  See Cashin v. Bello, 223 N.J. 328, 335 (2015) ("The best indicator of that intent is the plain language chosen by the Legislature.").

Moreover, the legislative history of the law evinces a clear legislative intent for retroactive application.  For example, a Senate Judiciary Committee Statement explains that the Child Victim's Act "creates a two-year window for lawsuits to be filed for acts of sexual abuse that occurred prior to the bill's effective date which would otherwise be time-barred" and the "extended statute of limitations is retroactive to cover past acts of abuse."  Senate Judiciary Committee Statement for Bill No. 477- L.2019, c. 120, March 7, 2019.  Therefore, the New Jersey legislature specifically intended the Child Victim's Act be given retroactive effect.  In turn, the Court affords a "high degree of judicial deference" to this legislative intent, Twiss, 124 N.J. at 467, and presumes the legislature "acted with existing constitutional law in mind and intended the act to function in a constitutional manner," Short v. Short, 372 N.J. Super 333, 338 (App. Div. 2004).  With this presumption in mind, the Court turns to the merits of Defendant's constitutional challenge.

New Jersey courts apply a two-factor analysis in considering constitutional challenges to a statute's retroactive application.  For the Court to find a due process violation, the challenger must establish that the statute's retroactive application would result in an interference with "vested rights" or will result in "manifest injustice."  Id.  Defendant cannot meet that burden here.

Retroactive application of the Child Victim's Act would not deprive Defendant of a vested right.  The retroactive application of extended statutes of limitations does not inherently disturb vested rights under the New Jersey Constitution.  See Panzino v. Continental Can Co., 71 N.J. 298, 305 (1976); Short, 372 N.J. Super. at 338 (explaining "retroactive amendments to the statutes of limitations resulting in a revival of an otherwise barred claim are not per se unconstitutional").  Indeed, the New Jersey Supreme Court has permitted the retroactive application of statutes, even

5

where the result permits a claim to proceed that was previously time barred.  See Panzino, 71 N.J. at 298.

A litigant has a vested right when it has a "a fixed interest" which "should be protected against arbitrary state action." Pa. Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372, 384 (1954). Generally, protectable fixed interests include property rights and preexisting contractual relationships.  See Twiss, 124 N.J. at 470.  Here, retroactive application of the Child Victim's Act would neither deprive Defendant of its property rights nor disadvantage a preexisting contractual relationship.  See id.  Rather, the passage of the Child Victim's Act only bars a procedural remedy once available to Defendant.  See Short, 372 N.J. Super at 339 ("Thus, defendant's expectation or hope that the statute of limitations would bar a tort suit against him . . . is not a constitutionally protected interest.").  Therefore, the only interest Defendant had in the prior statute of limitations appears to be the hope that time had afforded it a procedural remedy.  However, a "right cannot be regarded as vested unless it is something more than a mere expectation based upon an anticipated continuance of the present laws." D.J.L. v. Armour Pharm. Co., 307 N.J. Super. 61, 84 (Law. Div. 1997) (citing Phillips v. Curiale, 128 N.J. 608, 617 (1992)).  Defendant's expectation or hope that these claims would be time-barred is not enough to find a vested right.

In support of its argument that it has a vested right in a statute of limitations defense, Defendant cites the New Jersey Supreme Court's decision in State v. Standard Oil Co., 5 N.J. 281, 296 (1950).  However, the New Jersey Supreme Court therein established only a vested right in the statute of limitations for contract claims.  Id. at 295.  Indeed, the New Jersey Supreme Court has expressly stated that Standard Oil "should be confined to the particular issue before the court in that case, i.e., the effect of lapse of time upon a claim sounding in contract." Panzino, 71 N.J. at 305; see also D.J.L., 307 N.J. Super. at 85 (explaining Panzino limited Standard Oil to claims

6

"sounding in contract"). The Court finds no basis to extend this principle to a negligence action such as this where Defendant's conduct would not have "been different if the present rule had been known and the change foreseen." Chase Sec. Corp. v. Donaldson, 325 U.S. 304 (1945).

Additionally, manifest injustice would not result from retroactive application of the Child Victim's Act. The manifest injustice test "requires a weighing of the public interest in the retroactive application of the statute against the affected party's reliance on previous law, and the consequences of that reliance." Nobrega v. Edison Glen Associates, 167 N.J 520, 547 (2001) (quoting Nelson v. Bd. of Educ. of Twp. of Old Bridge, 148 N.J. 358, 371 (1997)). Here, this test requires the Court to weigh the public's interest in the Child Victim's Act against Defendant's supposed reliance on the prior statute of limitations.

The public has a compelling interest in upholding the Child Victim's Act. The Child Victim's Act was intended to remedy the injustice faced by survivors of childhood sexual abuse who are often left without redress for their injuries because the damage of that abuse can lay dormant for decades. See Rebecca L. Thomas, Adult Survivors of Childhood Sexual Abuse and Statutes of Limitations: A Call for Legislative Action, 26 WAKE FOREST L. REV. 1245 (1991); see also Governor's Statement Upon Signing, Senate Committee Substitute for Senate Bill No. 477-L.2019, c. 120, May 13, 2019. Indeed, often "victims of child abuse are not able to appreciate the extent or the cause of harm they experience as a result of sexual abuse perpetrated on them for many years after the abuse has ended." Sliney v. Previte, 473 Mass. 283, 295 (2015). The New Jersey legislature, like many state legislatures across the country, has enacted this type of legislation to cure this procedural defect in the legal system. See, e.g., Ariz. Stat. Ann. § 12–514 (2019), H.B. 2466, 54th Leg., 1st Reg. Sess. (Ariz. 2019); Ark. Code Ann. § 16-56-130 (1993); Cal. Civ. Proc. Code § 340.1 (2003, 2019); Conn. Gen. Stat. § 52-577d (2002); Del. Code Ann.

Tit. 10, § 8145 (2007); D.C. Code § 12-301 (2019). As such, the Child Victim's Act comports with the principle that a statute should be given retroactive application when "the statute is ameliorative or curative." Gibbons v. Gibbons, 86 N.J. 515, 523 (1981); see also Short, 372 N.J. Super at 338. Thus, there is a compelling public interest in upholding the Child Victim's Act.

On the other hand, with respect to Defendant's reliance, it cannot be credibly said that Br. Scheneman or Defendant reasonably relied on the prior statute of limitations in relation to the alleged conduct. The alleged conduct was illegal at the time and remains illegal today. That the alleged conduct was perpetrated with the then-existing statute of limitations in mind and reliance thereon is nonsensical. Therefore, the public interest in the protections afforded by the Child Victim's Act strongly outweigh any reliance interest Defendant could articulate. In turn, the Court finds that that manifest injustice would not result from its application here.[3]

Therefore, the Court finds that the Child Victim's Act does not violate the due process clause of the New Jersey Constitution.

### B. Failure to State a Claim

Defendant argues that Plaintiff has failed to adequately plead facts sufficient to state a claim for negligence. The Court disagrees.

To state a claim for negligence, a plaintiff must allege a duty of care, breach, causation, and damages. Jersey Cent. Power & Light Co. v. Melcar Utility Co., 212 N.J. 576, 594 (2013). Generally, the duty owed is "to take reasonable precautions to prevent the occurrence of

---

[3] CHILD USA, non-profit national thinktank working to end child abuse and neglect in the United States, moves to appear in this matter as amicus curiae. Amicus Motion, ECF No. 15. CHILD USA's interests in upholding the Child Victim's Act is clear and it has offered helpful perspective on the public interest surrounding this statute. Therefore, the Court grants CHILD USA's motion to appear amicus curiae. See Neonatology Assocs., P.A. v. Comm'r of Internal Revenue, 293 F.3d 128, 133 (3d Cir. 2002) ("[O]ur court would be well advised to grant motions for leave to file amicus briefs unless it is obvious that the proposed briefs do not meet Rule 29's criteria as broadly interpreted."). CHILD USA and Plaintiff both argue, inter alia, that the public interest favors upholding the Child Victim's Act and manifest injustice will not result from its retroactive application. For the reasons discussed supra, the Court agrees.

foreseeable harm to others." Id. New Jersey courts have recognized a "heightened duty" to protect children from foreseeable harm in situations where a defendant is tasked with supervision or otherwise ensuring the safety of children in its care. See Frugis v. Bracigliano, 177 N.J. 250, 282 (2003) (recognizing "the heightened duty of school boards to ensure students' safety from foreseeable harms, particularly those presented by the intentional acts of school personnel"); Steele v. Kerrigan, 148 N.J. 1, 34 (1997).

Here, Plaintiff has sufficiently stated a claim for negligence. Plaintiff has alleged: (a) Defendant owed a duty to protect Plaintiff from foreseeable harm as a child attending Defendant's summer camp, Compl. ¶¶ 10-61 (listing, inter alia, duty to exercise reasonable care in hiring and duty to protect); (b) Defendant breached that duty by, inter alia, granting him unfettered access to children at the camp, id. ¶¶ 62-68; and (c) this breach caused Plaintiff to be abused and suffer severe harm, id. ¶ 77. To establish the foreseeability of this harm, Plaintiff points to both Defendant's general policies and facts peculiar to Br. Scheneman. For example, the Complaint contains allegations that Defendant was aware of general incidents of abuse within the Catholic Church and operated under a general policy of concealment. Plaintiff also alleges that Defendant was subject to a church-wide policy that mandated secrecy and recommended offending priests be transferred. Id. ¶ 51. Additionally, he alleges Defendant transferred and reassigned Br. Scheneman pursuant to this policy. Id. ¶ 54. These facts support the inference that the harm

Plaintiff allegedly suffered was foreseeable. Therefore, the Court finds Plaintiff has adequately stated a claim for negligence.[4]

### C. Motion to Strike

Defendant argues that the Court should strike allegations from the Complaint related to the Holy See's attempted coverup of widespread sexual misconduct in the Catholic Church. The Court disagrees.

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Geruschat v. Ernst Young LLP, 505 F.3d 237, 248 n.9 (3d Cir. 2007). "Rule 12(f) establishes a high bar for striking the portions of a pleading" and Rule 12(f) motions are usually viewed with "disfavor." Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH, No. 10-453, 2010 WL 5239238, at *11 (D.N.J. Dec. 16, 2010). Motions to strike are generally denied "unless the allegations have no possible relation to the controversy," may cause undue prejudice to one of the parties, or if the allegations confuse the issues. Id. (citing Garlanger v. Verbeke, 223 F.Supp.2d 596, 609 (D.N.J.2002)).

As discussed, the allegations in the Complaint pertaining to the Holy See's policy of secrecy for allegations of sexual abuse bear a rational relationship to Plaintiff's claims. Given

---

[4] Defendant argues that the Complaint impermissibly contains only legal conclusions and generalized allegations of wrongdoing. As discussed, this is not the case. The facts pled allow the Court to draw the reasonable inference that Defendant is liable for the alleged misconduct. Indeed, this inference is more forgiving in circumstances where "common sense suggests that the relevant facts are largely within the control" of the Defendant. Harvey v. Cnty. of Hudson, No. 14-3670, 2015 WL 7573203, at *27 (D.N.J. Nov. 24, 2015). Therefore, the allegations that Defendant worked pursuant to a policy to conceal its misconduct help further support the necessary inference at this stage.

their logical relationship to Plaintiff's cause of action, these allegations are not wholly irrelevant nor unduly prejudicial. As such, striking these allegations from the pleading is unwarranted.

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss or, in the Alternative, to Strike, ECF No. 7, is **DENIED.** An appropriate order accompanies this Opinion.

**Dated**: June 7, 2021

> */s Madeline Cox Arleo*
> **HON. MADELINE COX ARLEO**
> **UNITED STATES DISTRICT JUDGE**